UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AUSTIN CAREY,<br><br>Defendant. | **6:16-mj-0088-MJS**<br><br>**ORDER AND JUDGMENT** |

On November 30, 2016, the Government charged Defendant Austin Lee Carey with one count in violation of 36 C.F.R. § 2.17(a)(3) and one count in violation of 36 C.F.R. § 2.34(a)(4). A bench trial was held on these charges on August 9, 2017, at which the Government was represented by and Legal Officer Susan St. Vincent and Legal Intern John V. Pries, and Defendant was represented by Assistant Federal Defender Reed Grantham. On review of the evidence submitted at trial and for the reasons set forth below, the undersigned finds Defendant guilty on both counts.

**I. Facts[1]**

At about 6:30 a.m. on September 6, 2016, in Yosemite Valley in California, Yosemite National Park ("YNP") Law Enforcement Rangers responded to reports of a person in a parachute hitting a tree in an area in Yosemite Valley below Glacier Point.

---

[1] The following facts are taken from the undisputed evidence presented at the August 9, 2017, trial.

1

Glacier Point sits at an elevation of about 7,200 feet above sea level.[2] The floor of Yosemite Valley is about 4000 feet above sea level.[3] Glacier Point and other nearby peaks are common BASE[4] jumping points.

YNP Rangers arrived at the reported scene to find Defendant suspended in the branches of a tree an estimated 130 to 150 feet above the ground. With him was a harness commonly used for attaching parachutes, a wing suit (a one piece uniform with material extending from the arms to the ribs and between the legs, commonly used by BASE jumpers to enable gliding while in the air), and a parachute. Below him were two canvassed roof tent cabins. A pair of goggles was found on the ground, and a helmet was on the roof of one of the tent cabins. In the course of verbal exchanges with the rangers, Carey dropped the harness (albeit without the warning the rangers had requested) and the wing suit.

Carey was able to climb down to a height of about 50 feet to where the branches ended. Professional YNP tree climbing loggers came and, determining that there was no way to free climb up or down the first 50 feet of the tree, attached rigging ropes necessary to get a climber up to Carey and attach a rope to him. They then lowered him to the ground.

Carey was immediately arrested and charged with violation of Title 36 Code of Federal Regulations Section 2.17(a)(3) (delivering a person or object by parachute, helicopter, or other airborne means) and Title 36 Code of Federal Regulations Section 2.34(a)(4) (disorderly conduct by creating a hazardous condition).

The case proceeded to trial, as noted, on August 9, 2017. The above facts were

---

[2] See Nat'l Park Service, Yosemite National Park, Plan Your Visit, Glacier Point Area Hiking Map, available at https://www.nps.gov/yose/planyourvisit/upload/glacierhikes.pdf. The Court may take judicial notice of these facts since their accuracy and authenticity cannot reasonably be questioned. Fed. R. EvId. 201(b), 901, and 902(5).

[3] See Nat'l Park Service, Yosemite National Park, Seasons, available at https://www.nps.gov/yose/planyourvisit/seasons.htm.

[4] The acronym in BASE jumping refers to the structures off of which enthusiasts of the extreme sport jump with the use of a chute: Buildings, Antennas (radio and television towers), Spans (bridges), and Earth (cliffs). United States v. Albers, 226 F.3d 898 (9th Cir. 2000).

adduced from the testimony of YNP Law Enforcement Ranger Owen Conlow, who arrived at the scene first described above, and YNP logger Justin Buzzard, who performed the rescue operation described above. The defense cross-examined both witnesses but called no witnesses.

**II.   Applicable Law**

As both the Government and the defense note, to prove guilt of delivery by air in violation of 36 C.F.R. § 2.17(a)(3), the following elements must be established]:

(1) The defendant delivered a person or object

(2) by parachute, helicopter or other airborne means,

(3) without emergency involving public safety or serious property loss, and

not pursuant to the terms or conditions of a permit.

Proof of guilt for creating a hazardous condition, 36 C.F.R. § 2.34(a)(4), requires a showing that:

(1) The defendant created or maintained a hazardous condition, and,

(2) Knowingly or recklessly created public alarm, nuisance, jeopardy, or violence.

**III.   Analysis**

   **A.   Introduction; Scope**

The Court's role is to determine if the elements of the alleged offenses have been established and, thus, whether Defendant is guilty of either or both of them. Absent a constitutional or other challenge to the validity or enforceability of the regulations – and there has been no such challenge here -- the Court will not pass judgment on the wisdom of the regulations or determine whether they are inconsistent with YNP's decision not to prohibit other dangerous activities. In short, while some, reportedly including Defendant[5], might like to see this case produce an endorsement of BASE jumping and/or condemnation of the regulation prohibiting it, and others will seek just the opposite, it will do no such thing. The Ninth Circuit Court of Appeals has already upheld

---

[5] See Pablo Lopez, The Fresno Bee, *He leaps off Yosemite cliffs, knowing it's illegal. Can his court case make BASE jumping legit?* (Aug. 10, 2017), *available at*, http://www.fresnobee.com/news/local/article166303332.html.

3

the enforceability of the "delivery by air" and "creating a hazardous condition" regulations as applied to BASE jumping. See United States v. Albers, 226 F. 3d 989 (2000) (upholding the conviction of a group of BASE jumpers for violating the same two regulations that are at issue here).

### B. Delivery by Air; Creation of Hazardous Condition

The evidence at trial established beyond a reasonable doubt that Defendant Carey delivered himself from the air by parachute and thereby created a hazardous condition which recklessly created public jeopardy.

#### 1. Defendant Base Jumped

The Ninth Circuit already has determined, in Albers, supra, that engaging in prohibited BASE jumping activity is a violation of the "delivery by air" prohibition of 36 CFR 2.17(a)(3). So the first question before the Court is: Did Defendant BASE jump?

Defendant's counsel argued that the evidence Defendant had engaged in BASE jumping was purely circumstantial. The Court agrees. However, the Court can envision no more convincing circumstantial evidence of BASE jumping than finding an individual snared in branches 130-plus feet up an unclimbable tree with a BASE jumping harness, a BASE jumping wing suit, and an open parachute, a few thousand feet below several high points known by the arresting YNP Ranger to be BASE jumping points.

The Court finds, based on the undisputed evidence presented at trial, that Defendant BASE jumped, as alleged, on September 6, 2016.

#### 2. Known Hazard?

The Court next addresses an equally easy issue to resolve: Did Defendant, by BASE jumping on September 6, 2016, knowingly or recklessly create a hazardous condition and a public nuisance in violation of 36 CFR 2.34(a)(4)? The Court finds that he did.

Any reasonable individual would have to know that jumping from a height of some 2000 or more feet above the ground[6] with something less than total control over

---

[6] It appearing Defendant propelled himself from Glacier Point or some other, higher, nearby point.

4

precisely where he might land[7], knowing that he had to land in Yosemite Valley, a heavily visited and populated area[8], would expose him and others to serious risk of injury. Were a jumper to land on top of another individual, he could produce serious injury, perhaps even death, to himself and an innocent victim. Danger to the jumper alone could come from landing, as Defendant did, high up in a tree, landing on or in front of a moving car, landing in a river, etc. Retrieving a jumper from any of those sites could expose a rescuer to danger. The reality of that danger was amply demonstrated here: A third party, a logger, had to put himself at risk to rescue Defendant. Had Defendant fallen from those 130 foot branches, he would have seriously injured himself. Had he fallen on someone, perhaps someone still sleeping in one of the canvas-topped tents, he certainly would have caused real injury. Had his helmet or goggles or any of other equipment fallen from 130 feet and struck someone, injury may well have resulted.

These observations and conclusions are fully in accord with those of the Ninth Circuit in Albers, supra, 226 F.3d at 994-995.

The Court thus finds Defendant guilty of violating the provisions of 36 C.F.R. § 2.34(a)(4).

**C.    Permit or Emergency?**

The final issue for the Court to determine is: who bears the burden of proving the presence (or absence) of the two exceptions identified in 36 C.F.R. § 2.17(a)(3): an emergency and/or a permit?[9]

Defendant relies on United States v. Oxx, 56 F. Supp. 2d 1214 (D. Utah July 15,

---

[7] It can reasonably be assumed Defendant did not intend to end his flight 130 feet above the ground in the branches of a tree from which he would have to be rescued by a professional logger.
[8] In 2016, the year of the incident here, YNP had 5,217,114 visitors. See Nat'l Park Serv., Yosemite Nat'l Park, Park Statistics, available at https://www.nps.gov/yose/learn/management/statistics.htm. The majority of these visitors arrive between May and September. Nat'l Park Serv., Yosemite Nat'l Park, Visitation Statistics, available at https://www.nps.gov/yose/planyourvisit/visitation.htm. In 2015, when YNP had approximately one million fewer visitors at 4,294,381, it was the fourth most visited national park in the United States. Nat'l Park Serv. Publ., Most Visited, available at https://www.nps.gov/aboutus/upload/Visitation-historic-and-top-10-sites-2015.pdf.
[9] Since both the Government and Defendant focus their analysis on the permit exception, the Court will similarly limit its analysis to that exception.

5

1999), for the proposition that these exceptions comprise the Government's case-in-chief and require proof beyond a reasonable doubt. In Oxx, the district court for the District of Utah was tasked with the same question before this court: whether 36 CFR § 2.17(a)(3) required the government to prove the absence of a permit or whether that burden rested with the defendants, who were accused of BASE jumping in the Glen Canyon National Recreation Area, to prove they had a permit.

The Oxx court turned to the only other case that had considered, albeit tangentially, the allocation of the burden of proof in the context of BASE jumping, United States v. Carroll, 813 F. Supp. 698 (E.D. Mo. 1993). There, a district court made certain findings of fact and conclusions of law based on "the evidence adduced at trial." Id. at 701-02. Relevant here, that evidence was deemed "undisputed that no permit or other authorization was granted for the climb or the parachute jump." Id. at 703. Specifically, the judge found that none of the defendants "had applied for or received an appropriate permit, permission, or authorization either to climb the Arch, to jump from it, or to photograph the jump," Id. at 702, and further found that one of the defendants "knew that parachuting from the top of the Arch without a permit or appropriate permission was illegal." Id. at 701. It is not clear from the order what evidence the court relied on in making these findings.

The Oxx court interpreted Carroll as requiring the government to prove the absence of the permit beyond a reasonable doubt. 56 F. Supp. 2d at 1219. Since the government failed to present any evidence, testimonial or otherwise, establishing the nonexistence of a permit, the court ultimately acquitted the defendants.

In reaching that conclusion, Oxx also cited to United States v. Vuitch, 402 U.S. 62, 71 (1971), where the United States Supreme Court referred to "a general guide to the interpretation of criminal statutes that when an exception is incorporated in the enacting clause of a statute, the burden is on the prosecution to plead and prove that the defendant is not within the exception." There, the Court considered the burden of proof as to the two exceptions set forth in a statute criminalizing abortions, which is

6

reproduced here in relevant part:

> Whoever, by means of any instrument, medicine, drug or other means whatever, procures or produces, or attempts to procure or produce an abortion or miscarriage on any woman, *unless the same were done as necessary for the preservation of the mother's life or health and under the direction of a competent licensed practitioner of medicine*, shall be imprisoned in the penitentiary not less than one year or not more than ten years * * *.

Vuitch, 402 U.S. at 67-78 (emphasis added). Relying on the "general guide" and finding that the exceptions were incorporated in the enacting clause, the Court determined that the burden was on the prosecution to prove the absence of the exceptions.

Vuitch's "general guide," however, is not applied invariably. When, for example, Congress has clearly expressed its intent as to the allocation of burden of proof, then that intent trumps the general rule. See, e.g., United States v. Matthews, 749 F.3d 99, 10405 (1st Cir. May 16, 2014) (statute expressly allocated burden to defendant to come forward with evidence of an exception). As Oxx itself recognized, congressional intent is not explicit in the statute at issue here. See 56 F. Supp. at 1220.

The "general guide" is also not applied when the exception appears as part of a substantive clause rather than the enacting (or prohibition) clause. In State v. Anonymous, 179 Conn. 56 (1980), for example, the Connecticut Supreme Court relied on Vuitch in holding that the exception in the statute, which prohibited the carrying and sale of a dangerous weapon, was part of the enacting clause, and thus part of the prosecution's case-in-chief. Id. at 517 n.1, 520. In that case, as in Vuitch, the exception was contained in the prohibition clause:

> (General Statutes) Sec. 53-206. Carrying and sale of dangerous weapons. (a) Any person who carries upon his person any slung shot, air rifle, BB. gun, blackjack, sand bag, metal or brass knuckles, or any dirk knife, or a switch knife, or any knife having an automatic spring release device by which a blade is released from the handle, having a blade of over one and one-half inches in length, or stiletto, or any knife the edged portion of the blade of which is four inches or over in length, or any other dangerous or deadly weapon or instrument, *unless such person has been granted a written permit issued and signed by the first selectman of a town, the mayor or chief of police of a city or the warden of a borough,*

7

> *authorizing such person to carry such weapon or instrument within such town, city or borough*, shall be fined not more than five hundred dollars or imprisoned not more than three years or both...."

State v. Anonymous, 179 Conn. at 517 n.1 (emphasis added).

In Simopoulos v. Com., 221 Va. 1059 (Apr. 24, 1981), on the other hand, the Virginia Supreme Court considered the allocation of the burden to prove the medical necessity defense in the context of a statute criminalizing abortion. The statute there read, "A person who destroys a woman's unborn child, or causes her to abort or miscarry, by the use of any substance or by any other means with intent to achieve such a result is guilty of a Class 4 felony, *unless the procedures employed and the result achieved are made lawful by other provisions of Article 9*." Id. at 1065 (emphasis added). Concluding that the exception was part of a substantive clause subsequent to the enacting clause of the statute, the court expressly declined to follow Vuitch's "general guide" and held instead that the burden was on the defendant to prove the exception. Id. at 1068-69.

In this case, 36 C.F.R. § 2.17(a) provides:

> (a) The following are prohibited: ... (3) Delivering or retrieving a person or object by parachute, helicopter, or other airborne means, *except in emergencies involving public safety or serious property loss, or pursuant to the terms and conditions of a permit.*

(Emphasis added.) Since the permit exception is subsequent to the enacting clause prohibiting the delivery or retrieval of a person by parachute, this factor weighs against the application of Vuitch's "general guide" and instead towards the conclusion that the burden of proving the exception rests with the defendant.

The undersigned also considers the "well-established rule ... that a defendant who relies upon an exception to a statute made by a proviso or distinct clause, whether in the same section of the statute or elsewhere, has the burden of establishing and showing that he comes within the exception." United States v. Henry, 615 F.2d 1223, 1234-35 (9th Cir. 1980). In Henry, the statute under which the defendant was found

8

guilty was 18 U.S.C. § 922(e), which provides:

> (e) It shall be unlawful for any person knowingly to deliver or cause to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce, to persons other than licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, any package or other container in which there is any firearm or ammunition without written notice to the carrier that such firearm or ammunition is being transported or shipped; *except that any passenger who owns or legally possesses a firearm or ammunition being transported aboard any common or contract carrier for movement with the passenger in interstate or foreign commerce may deliver said firearm or ammunition into the custody of the pilot, captain, conductor or operator of such common or contract carrier for the duration of the trip without violating any of the provisions of this chapter.*

(Emphasis added.) This exception, of course, follows the enacting clause; it is also a distinct clause. In holding that the government did not need to establish the non-existence of the exception, the Ninth Circuit relied upon the aforementioned "well-established rule" to hold that the defendant, failing to present any evidence of the exception, did not come within it. 615 F.2d at 1234-35.

Similarly, in Hockenberry v. United States, 422 F.2d 171 (9th Cir. 1970), the Ninth Circuit held that the government did not bear the burden of pleading or proving the absence of "just cause or excuse," which were exceptions to the charging statute, 18 U.S.C. § 113:

> 'Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows: * * * (c) Assault with a dangerous weapon, with intent to do bodily harm, *and without just cause or excuse*, by fine of not more than $1,000 or imprisonment for not more than five years, or both.'

(Emphasis added.) "By a rule of long standing, 'an indictment or other pleading founded on a general provision defining the elements of an offense, or of a right conferred, need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere, and … it is incumbent on one who relies on such an exception to set it up and establish it.'" Id. at 173 (citing McKelvey v. United States, 260 U.S. 353 (1922)).

9

The Ninth Circuit affirmed this point in United States v. Freter, 31 F.3d 783, 788 (9th Cir. 1994). In that case, the defendant appealed his jury conviction for failing to notify federal authorities of the release of a reportable quantity of a hazardous substance from a facility in his charge in violation of 42 U.S.C. § 9603(b)(3). Pursuant to that statute, "Any person – (3) in charge of a facility from which a hazardous substance is released, *other than a federally permitted release*, … who fails to notify immediately the appropriate agency of the United States Government as soon as he has knowledge of such release …" is subject to a fine or imprisonment or both. Defendant argued that the government bore the burden of proving that a release is not federally permitted since the exception is not set forth in a distinct statutory section, but the Ninth Circuit held that the exception for federally permitted releases states an affirmative defense, holding that:

> The doctrine we apply … is not limited to statutes in which the relevant language is in a separate section, see [United States v. Green, 962 F.2d 938,] 941 [9th Cir. 1992] (the proviso may be "in the same section of the statute or elsewhere"), or in which the relevant language is in a separate sentence from that describing the elements of the crime, see United States v. Chodor, 479 F.2d 661, 663-64 & n.2 (1st Cir.), cert. denied, 414 U.S. 912 (1973) (statute prohibits individuals from having in their "possession or custody, except under authority from the Secretary of the Treasury or other proper officer, any obligation or other security made or executed ... after the similitude of any obligation or other security issued under the authority of the United States"); Hockenberry v. United States, 422 F.2d 171, 173 (9th Cir. 1970); Tritt v. United States, 421 F.2d 928, 929-30 (10th Cir. 1970); [United States v. Oettinger], 817 F. Supp. 819, 821-22 [N.D. Cal. 1992].

Freter, 31 F.3d at 788. Here, while the permit exception is not in a separate sentence or even section, it is sufficiently separate and distinct from the main clause.

The Freter court also relied on another general rule: that where "a statutory prohibition is broad and an exception is narrow, it is more probable that the exception is an affirmative defense." 31 F.3d at 788. An affirmative defense is defined as one that "does not serve to negative any facts of the crime." Id. (citing United States v. Mayo, 705 F.2d 62, 75 (2d Cir. 1983) (quoting Patterson v. New York, 432 U.S. 197, 206-07 (1977)).

10

In this case, assuming Defendant proffered evidence of a permit, it would not negate the elements of the crime, namely, "[d]elivering or retrieving a person or object by parachute, helicopter, or other airborne means…." Thus, this general rule also weighs in favor of allocating the burden of proof on the permit exception to Defendant.

And finally there is the issue of which party is in the best position to prove the existence or non-existence of a permit. In Oxx, the district court determined "the United States, as the issuer of the permit, would be in the best position to demonstrate the non-existence of such authorization." 56 F. Supp. 2d at 1220. "This could have easily been demonstrated by having the Park Superintendent or some other official person testify that no permits for BASE jumping had been issued to any of the defendants." Id.

The undersigned disagrees. Such testimony would have been superfluous in light of the YNP Superintendent's Compendium (a regulatory supplement unique to YNP), which strictly prohibits jumping from a fixed object with a parachute and landing with a parachute after jumping,[10] and YNP's Safety Regulations,[11] which provide, without exception, that "**BASE jumping** is prohibited" even though "[h]ang gliding is allowed with a permit" (emphasis in original).

In the event that a permit was issued to Defendant to override this strict prohibition on BASE jumping at YNP, Defendant would surely be in the best position to provide it. See United States v. Mayo, 705 F.2d 62, 76 (2d Cir. 1983) ("While it would not be an impossible burden for the government to bear, a legitimate antique gun dealer or collector is certainly in a better position to place the exception in issue.")

For these reasons, the undersigned concludes that Defendant bears the burden of proving that he was permitted to BASE jump. Beyond noting the circumstantial nature of the evidence, however, the only defense presented was reflected in closing arguments when defense counsel argued that the Government had the burden of proving all elements of a violation of 36 C.F.R. § 2.17(a)(3). Yet Defendant produced no

---

[10] Available at https://www.nps.gov/yose/learn/management/lawsandpolicies.htm.

[11] Available at https://www.nps.gov/yose/planyourvisit/safety.htm.

11

evidence whatsoever on the issue of whether he had a permit to BASE jump (or that he jumped because of an emergency). Absent any evidence on that issue from him, the Court finds Defendant guilty of violating 36 C.F.R. § 2.17(a)(3).

**IV.  Conclusion**

Based on the foregoing, it is the JUDGMENT of this Court that Defendant is guilty as charged in Counts 1 and 2 of the criminal complaint against him, by violating both 36 C.F.R. § 2.34(a)(4) and 36 C.F.R. § 2.17(a)(3) as alleged. Defendant shall appear in this Court for sentencing on Wednesday October 18, 2017, at 10:00 AM.

IT IS SO ORDERED.

Dated:   September 25, 2017           /s/ *Michael J. Seng*
                                        UNITED STATES MAGISTRATE JUDGE